**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **RUTHMIRA GIRALDO et al.,** | : | **No. 15-3101** |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                    NOVEMBER 10, 2015

After Defendants Ruthmira Giraldo and El Bochinche Restaurante, Inc., (hereinafter "Defaulting Defendants") failed to respond to its Complaint,[1] J&J Sports Productions filed this motion for default judgment, seeking statutory damages, attorneys' fees, and costs. Neither of the two Defaulting Defendants responded to J&J's motion. The matter is now ripe for decision.

BACKGROUND

Plaintiff J&J Sports Productions owned the rights to distribute the Miguel Cotto v. Sergio Martinez, WBC Middleweight Championship Fight Program (the "Program"), which was televised nationwide on June 7, 2014. The Program was only available to commercial establishments by purchasing the rights to exhibit it.[2] According to an investigator hired by J&J, El Bochinche Restaurante, a restaurant and bar operated by Defendants, intercepted and broadcast the Program on three big-screen televisions, without purchasing a license to do so.

---

[1] Defendants Barbara J. Leonarski and Thomas G. Richter have not yet been served.

[2] According to the "rate card" for the Program, the cost to broadcast the Program in a commercial establishment with a capacity of 1-100 people was $800. *See* Gagliardi Aff., Docket No. 14, at 18.

1

The investigator counted 30 patrons at the establishment at the time of the broadcast, and he observed that there did not appear to be any advertising or cover charge for the Program.  The investigator did not provide an estimate of El Bochinche's maximum capacity or an estimate of the attendance at the restaurant on any other night, nor did he note any menu or drink prices.

On June 4, 2015, J&J filed this suit against El Bochinche Restaurante, Inc., and four individuals, alleging violations of 47 U.S.C. § 553(a)(1) ("Unauthorized interception or receipt" of "any communications service offered over a cable system") and  47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person...."), as well as alleging a common-law conversion claim.  J&J alleges that the four individuals identified are officers of the business entity El Bochinche Restaurante, Inc., and are listed on the Pennsylvania Liquor Control Board license as such.  It alleges that they should be held vicariously liable for any piracy because they all had the right and ability to supervise the interception of the Program and had a strong financial interest in its interception.  J&J does not specify the titles or roles of the individuals in any detail.

On July 14, 2015, J&J served both El Bochinche Restaurante, Inc., and Ruthmira Giraldo.  Neither of these Defendants responded to the Complaint, and on September 11, 2015, J&J requested default as to these Defendants.  Default was entered the same day.  On October 9, 2015, J&J filed an application for default judgment as to its § 553 claim only, seeking statutory and enhanced damages against the Defaulting Defendants, as well as attorney's fees and costs.  In support, J&J filed multiple affidavits, outlining service, the investigation into the alleged violations, and the problems of piracy generally.  Defaulting Defendants did not respond to the motion.

Legal Standard

Federal Rule of Civil Procedure 55 governs the procedure a plaintiff must follow to obtain a default judgment against a nonresponsive defendant.  First, if the plaintiff shows the defendant's "fail[ure] to plead or otherwise defend, ... the clerk must enter [the defendant's] default," Fed. R. Civ. P. 55(a), which is only valid if the defendant was properly served. *See Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1304 (3d Cir.1995).

The plaintiff may then "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  The court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action."  10A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2688 (3d ed. 2013) (citing cases).  As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint, *e.g., Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir.1994).  Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted.  Wright & Miller, *supra,* § 2688.

If the court determines that the plaintiff has stated a cause of action, it must then assess damages.  Unlike liability, unless damages are "liquidated or computable," they "cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Rule] 55(b)(2)," *Comdyne I,* 908 F.2d at 1152, or otherwise by such proof as the plaintiff may submit without a hearing.

Default judgments are disfavored, *see Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir. 1982); the default judgment context usually offers none of the adversarial argument upon which

the American legal system is founded and which remains a pillar of courts' ability to make

informed and well-reasoned decisions.  Thus, under *Chamberlain v. Giampapa,* 210 F.3d 154

(3d Cir. 2000), the district court must examine three additional factors to determine whether it

should grant a default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether

the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to

culpable conduct."  *Chamberlain,* 210 F.3d at 164.

 "Considerable delays," especially those that might "stretch on indefinitely," are sufficient

to show prejudice to the plaintiff.  *Grove v. Rizzi 1857 S.P.A.,* No. 04–2053, 2013 WL 943283, at

*2 (E.D. Pa. Mar. 12, 2013) (citation omitted).  Second, outside of the court's obligation to

decide whether it has jurisdiction and whether the complaint states a claim, the court may

presume that an absent defendant who has failed to answer has no meritorious defense, *e.g., Doe

v. Simone,* No. 12–5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the

court's responsibility to research the law and construct the parties' arguments for them," *Econ.

Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008).  Third, the

defendant's failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for

this failure or refusal" may "qualif[y] as culpable conduct with respect to the entry of a default

judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the

oppositional and uncooperative."  *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.,* 657 F. Supp.

2d 545, 554 (E.D. Pa. 2009).

## DISCUSSION

  **I.**  **Liability**

 As an initial matter, the Court must determine whether J&J has properly stated a claim

under § 553.  Section 553(a) of Title 47, U.S.Code, provides that "[n]o person shall intercept or

receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  The statute provides a civil cause of action that may be brought by "[a]ny person aggrieved by any violation" of the prohibition of interception or reception, *id.* at § 553(c)(1), as well as criminal penalties, *id.* § 553(b).  Here, J&J alleged that the Program was broadcast over cable and satellite, and El Bochinche intercepted it without paying for the broadcast rights, so El Bochinche must have done so either by cable or satellite.  In the absence of any evidence to indicate which method was used, the Court will presume that the interception was by cable and apply § 553, as J&J requests and as this Court has held is proper in this situation. *See Joe Hand Promotions, Inc. v. Yakubets*, Civil Action No. 12-4583*, 2013 WL 5224123, at *4 (E.D. Pa. Sept. 17, 2013) (*Yakubets I*) ("Having reviewed the case law and considered the issue, this Court subscribes to the view that where a plaintiff's complaint pleads claims under both §§ 553 and 605, but at the default judgment stage the plaintiff can prove neither with individual specificity, then § 553 will be applied.").  Based on these allegations, the Court concludes that J&J has sufficiently stated a claim against El Bochinche.

Analyzing the claim against Defendant Ruthmira Giraldo is a more complicated matter.  Ms. Giraldo may only be held liable for the intercepted broadcast if she is found to be vicariously liable for the interception.  J&J argues that it has alleged that Ms. Giraldo is an officer of El Bochinche Restaurante, Inc., that she was specifically identified as such on the restaurant's liquor license, that she had a right and ability to supervise the interception of the Program, and that she had a strong financial interest in the Program's interception.  *See* Compl., ¶¶ 7, 8, 13, 16,

19-20, 23.  Because of these allegations, J&J argues that it has sufficiently set forth a claim against Ms. Giraldo.

This Court analyzed in great detail the standard for individual vicarious liability under § 553 in *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 292-302 (E.D. Pa. 2014) (*Yakubets II*).  In *Yakubets II*, the Court summarized the standard for finding vicarious liability as follows:

> An individual (or business entity) may be held vicariously liable for violating § 553 if he (1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.

*Id.* at 296.  In applying this test in the default judgment context, the Court held that conclusory allegations of a right and ability to supervise the violative activity and direct financial interest are not enough – that the proponent of default judgment must offer facts to support the plausibility of those conclusory allegations.  *Id.* at 299-300.  In *Yakubets II*, the plaintiff had alleged that the individual for whom vicarious liability was sought was identified on the company's liquor license as "President, Secretary/Treasurer, Director, Stockholder, and Manager/Steward."  *Id.* at 300.  Given these specific (and numerous) titles, the Court held that direct financial benefit and the right and ability to control could be inferred, unlike in other similar cases in which a plaintiff pleaded that a particular individual was an officer, director, shareholder, employee, agent, *and/or* representative.  *Id.*

Here, the question is much closer than in the *Yakubets II* case, in which the Court held that the plaintiff had just barely pleaded enough to tip the scales in favor of vicarious liability. Apart from conclusory allegations parroting the test for vicarious liability, the only fact J&J

alleges in support of vicarious liability is that the liquor license for El Bochinche names Ms. Giraldo as an officer.  It does not allege that Ms. Giraldo held a specific office, let alone any other details regarding her role with El Bochinche.  The Court, therefore, concludes that J&J's Complaint has not sufficiently alleged facts (as opposed to conclusory statements) from which it can infer that Ms. Giraldo had a right or ability to control the violative conduct or a direct financial benefit.  Thus, the Court will not hold Ms. Giraldo liable for El Bochinche's statutory violation.

## II.    *Chamberlain* Factors

In this case, J&J easily meets the *Chamberlain* default judgment factors.  Because the Clerk of Court entered El Bochinche's default on September 11, 2015, and since that time, El Bochinche has neither appeared nor responded to J&J's Complaint or Motion for Default, the Court finds that there is little chance that El Bochinche will respond and, therefore, finds that the delay could continue indefinitely.  Therefore, J&J has shown sufficient prejudice.  Because El Bochinche has failed to appear in this matter whatsoever, it has not asserted any defenses, much less a meritorious defense, that would completely bar Plaintiff's claim.  Accordingly, the Court considers that El Bochinche's lack of meritorious defense weighs in favor of granting default judgment.  Moreover, El Bochinche's failures to respond must be presumed to be due to culpable conduct—with the caveat that it could move to set aside default judgment.

## II.    Damages

J&J seeks both statutory and enhanced damages.  This Court exhaustively examined the standards for both types of damages under § 553 in *Yakubets II*, and will follow that analysis here.

## A.  Statutory Damages

In *Yakubets* II, this Court held "that statutory damages under § 553(c)(3)(A)(ii) 'should be calculated based solely on an estimate of actual damages,' without considering deterrence," leaving the consideration of deterrence for enhanced damages.  *Yakubets II*, 3 F. Supp. 3d at 277 (quoting *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181-83 (1st Cir. 2006)).  In estimating actual damages for the purpose of calculating statutory damages, the Court considered factors such as what the defendant would have paid for a lawful license and any profits that are attributable to the violation to arrive at a statutory damages figure.  To estimate profits, the Court listed several factors for consideration, such as

> (1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant in the case before the court.

*Id.* at 280.  In *Yakubets II*, in addition to the amount of the sublicense fee and in spite of a lack of any evidence of food and drink prices or normal bar attendance, the Court estimated profits by assuming that half of the individuals who attended did so solely because of the pirated broadcast, that those individuals spent $20 each on food and drink, and that the remaining patrons spent $10 more than they normally would because they stayed to watch the program.  *Id.* at 281-82.

J&J requests a lump sum of $5,000 in statutory damages.  It does not provide any specific reason for that figure in terms of profit estimates, and it does not cite *Yakubets II* in its analysis.[3] Indeed, J&J relies on cases that consider deterrence at the statutory damages stage, which is directly contrary to the holding in *Yakubets II*.  Because J&J made no attempt to tie its statutory damages request to the test set forth in *Yakubets II*, the Court is left to do the analysis on its own.

This case resembles *Yakubets II*, in both crowd size (there, 48 attendees; here, 30), in the number of televisions tuned in to the program (there, 4; here, 3), in the amount of known advertising for the program (none, in both cases), in the lack of a cover charge, and in the lack of evidence of food and drink prices and normal attendance figures.  Thus, the Court will employ the same method of calculating statutory damages as it did there.  To start, the commercial fee in this case was $800.  As to a profit estimate, if the Court assumes that half of the individuals present came solely to see the Program and spent $20 each, that adds up to $300 (15 people multiplied by $20).  If the Court assumes that the remaining patrons stayed longer and spent $10 more than they otherwise would have because of the Program's broadcast, that adds up to $150 (15 people multiplied by $10).  The total statutory damages to which J&J is entitled, then, is $1250.

**B.  Enhanced Damages**

To receive enhanced damages under § 553(c)(3)(B), J&J must show that the violation was committed "willfully" and "for the purposes of commercial advantage or private financial gain."  47 U.S.C. §553(c)(3)(B).  In *Yakubets II*, this Court exhaustively examined the case law on willfulness under the statute and concluded that because the interception of a pay-per-view

---

[3] The Court notes that counsel for Plaintiff is well aware of this Court's stance on § 553 damages as set forth in *Yakubets II*.  Counsel for Plaintiff represented the plaintiff in *Yakubets II*, as well.

cable event is unlikely to be accidental and because the average individual would recognize that the intentional, unauthorized interception of programming is illegal, willfulness could be inferred from facts very similar to those pleaded here.[4]  *See Yakubets II*, 3 F. Supp. 3d at 287-88. Likewise, the Court concludes that J&J has pleaded that the violation here was willful. Moreover, as the Court concluded in *Yakubets II*, the commercial advantage/private financial gain prong has been satisfied by evidence that El Bochinche is a commercial establishment and that the broadcast of the Program on three televisions evinces a desire to lure or retain patrons to that commercial establishment.

As to the measure of enhanced damages, J&J essentially asks the Court to apply a multiplier of four to statutory damages to arrive at enhanced damages, arguing that the violation here, which featured three televisions broadcasting the Program to 30 patrons, is egregious and that a sum sufficient to deter future conduct is necessary and proper.

In *Yakubets II*, the Court held that, "[t]he application to the actual or statutory damages award of a simple multiplier, the value of which may be adjusted as the case demands, best achieves the dual goals of general and specific deterrence" for purposes of awarding enhanced damages.  *Id.* at 290.  In that case, because there was no evidence that defendants were repeat violators, the Court applied a minimum multiplier of three.  This case is no different.  Although J&J seeks to characterize the violation here as "egregious," the conduct at issue in this case is no more egregious than the conduct in *Yakubets II*.  Therefore, the Court will take the same

---

[4] In *Yakubets II*, in addition to conclusory allegations of willfulness, the plaintiff pleaded that four television sets were all showing the pirated program, and the Court found that it therefore would have been highly unlikely for the interception to be accidental, given the encrypted nature of the broadcast. Here, there were three television sets simultaneously tuned to the Program, and it would be similarly improbable for the interception of the Program on all three screens to be accidental, allowing for an inference of willfulness.

approach as it has in the past and apply a multiplier of three to J&J's statutory damages award, giving J&J $3750 in enhanced damages.

### C. Leave to File Motion for Attorneys' Fees and Costs

"The court *may* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 553(c)(2)(C) (emphasis added).  An award of attorneys' fees and costs under § 553 is discretionary rather than mandatory. *E.g., Burdulis,* 460 F.3d at 170 n. 2; *Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1009 (2d Cir. 1993).  J&J seeks to file a motion for attorneys' fees and costs in this case.  The Court will allow J&J to do so, providing that J&J fully addresses therein (a) why Mr. Riley's fees are reasonable and (b) the legal issue of whether the rule that "a judge [not] decrease a fee award based on factors not raised at all by the adverse party," *Bell v. United Princeton Props., Inc.,* 884 F.2d 713 (3d Cir.1989), applies to the default judgment context.[5]

### CONCLUSION

For the foregoing reasons, the Court will grant J&J's motion in part and deny it in part. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[5] This Court gave Plaintiff's counsel this same opportunity in *Yakubets II,* but counsel did not avail himself of the opportunity in that case.